**IN RE: Marsha HOWARD, Debtor.**

**Case No. 10–52527 SLJ**

United States Bankruptcy Court, N.D. California.

Date: April 21, 2016, Time: 10:00 a.m., Ctrm: 3099

Signed June 1, 2016

Cathleen Cooper Moran, Moran Law Group, Inc., Mountain View, CA, for Debtor.

## ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DEEM MORTGAGE CURRENT

Stephen L. Johnson, U.S. Bankruptcy Judge

Debtor's Motion to Deem Mortgage Current ("Motion") came on for hearing at the above-referenced date and time. Appearances were noted on the record. After hearing arguments from counsel, the court took the matter under submission. For the following reasons, the court will grant the Motion in part and deny in part.[1]

## I. BACKGROUND

The relevant facts are not disputed. Debtor filed a voluntary petition under Chapter 13 of the Bankruptcy Code on March 15, 2010.[2] The schedules disclosed that Debtor has an ownership interest in real property located at 240 Pacific Street, Brookdale, California ("Property"). The Property is encumbered by a senior lien in favor of PNC Mortgage ("PNC" or "Creditor") in the approximate amount of $705,524. The confirmed plan provided that mortgage arrears in the amount of $26,-760.70[3] would be paid through the plan and that Debtor would make on-going mortgage payments of $3,023.00 per month directly to PNC.

On January 13, 2016, the chapter 13 trustee ("Trustee") filed a Notice of Final Cure Payment ("Notice") pursuant to Bankruptcy Rule 3002.1(f), stating that the claim of PNC in the amount of $26,760.70 has been paid in full by the Trustee. The Notice further states:

Within 21 days of the service of the Notice of Final Cure Payment, the creditor MUST file and serve a Statement <u>as a supplement to the holder's proof of claim</u> on the Debtor, Debtor's Counsel and the Chapter 13 Trustee, pursuant to Fed.R.Bank.P. 3002.1(g), indicating 1) whether it agrees that the Debtor has paid in full the payment required to cure the default on the claim; and 2) whether the Debtor is otherwise current on all payments consistent with 11 U.S.C. § 1322(b)(5).

<u>The statement shall itemize the required cure or post-petition amount,</u> if any, that the holder contends remain unpaid as of the date of the statement. <u>The statement shall be filed as a supplement to the holder's proof of claim</u> and is not subject to Rule 3001(f). Failure to notify may result in sanctions. (Emphasis added).

---

1. The findings and conclusions in this Order supercedes and replaces the court's tentative ruling made orally on the record at the hearing.

2. Unless specified otherwise, all chapter, code and rule references are to the Bankruptcy Code, 11 U.S.C. §§ 101–1532, and the Federal Rules of Bankruptcy Procedure, Rules 1001–9037.

3. The amount of arrears in the confirmed plan is identical to the amount in PNC's proof of claim.

Despite these instructions, on February 2, 2016, PNC's counsel Peter Van Zandt filed a Response to Notice of Final Cure Payment ("First Response") on the court's docket rather than as a supplement to PNC's proof of claim. As with all of PNC's responses, PNC used Official Form 4100R.[4] In the First Response, PNC disagreed with the Notice and asserted that total prepetition amount of $20,712 remained unpaid. At the same time, PNC stated that Debtor was current with all postpetition payments, including all fees, charges, expenses, escrow, and costs. No itemized statement was attached to the First Response breaking down the alleged cure amount of $20,712. The First Response was signed by Mr. Van Zandt, as PNC's authorized agent, under penalty of perjury and dated February 2, 2016.

The very next day, February 3, 2016, Mr. Van Zandt filed another Response to Notice of Final Cure Payment ("Second Response") on the court's docket. Mr. Van Zandt did not identify the Second Response as an amendment to the First Response. In the Second Response, PNC stated that it agreed with the Notice indicating that Debtor has paid in full the prepetition arrears and was current on all postpetition obligations. Mr. Van Zandt signed the Second Response under penalty of perjury on February 3, 2016.

Two days later, on February 5, 2016, Mr. Van Zandt filed yet another Response to Notice of Final Cure Payment ("Third Response") on the court's docket. This time PNC alleged that whereas Debtor had paid the prepetition arrears in full, Debtor was delinquent on postpetition mortgage payments in the amount of $674,693.60 and outstanding fees, charges, expenses, escrow, and costs in the amount of $62,623.90, for a total of $737,317.50. No itemized statement was attached to the Third Response. Mr. Van Zandt also signed the Third Response under penalty of perjury.

On February 10, 2016, Debtor filed this Motion, in which Debtor requested the court to strike all three responses filed by PNC, award attorney's fees, and deem the mortgage postpetition current, pursuant to Bankruptcy Rule 3002.1(i). Particularly, Debtor alleged that she could not respond to PNC's allegations because none of three dissimilar responses was supported by an itemization as required under Bankruptcy Rule 3002.1(g).

PNC filed a timely opposition in which it asserted that it timely filed a response to the notice of final cure payment. PNC also alleged that the response was correct in that Debtor has paid in full her prepetition arrears but Debtor has outstanding postpetition obligations in the amount of $62,623.90. Although it appeared PNC was relying on the Third Response, it did not mention the outstanding postpetition mortgage payments of $674,693.60. While PNC acknowledged that it did not include an itemized statement of the postpetition charges, it asserted that such omission was harmless because Mr. Van Zandt sent a copy of the itemized statement to Debtor's counsel on February 3, 2016. PNC contended in its opposition that deeming the mortgage current would be an arbitrary and punitive sanction because the $62,623.90 that PNC sought arose from property taxes and insurance that PNC paid on Debtor's behalf. Notably, PNC did not object to the request for attorney's fees.

---

4. Official Form 4100R requires, if a creditor claims that a debtor is not current on postpetition payments, that creditor disclose (1) all ongoing postpetition payments due, (2) total fees, charges, expenses, escrow, and costs outstanding, and (3) an itemization of such expenses. Neither party contended that the form was a misapplication of Rule 3002.1.

At the hearing on the Motion on March 17, 2016, Mr. Van Zandt did not appear. When the court contacted Mr. Van Zandt's law firm, another attorney by the name of Greg Mascitti appeared telephonically. He had no knowledge of the case and informed the court that Mr. Van Zandt was in trial at another court. For reasons stated at the hearing, the court sanctioned Mr. Van Zandt the attorney's fees and costs incurred by Debtor's counsel for appearing at the hearing.[5] Furthermore, as set forth in the Order for Further Briefing and Sanctions against Counsel for PNC Bank, entered on March 23, 2016, the court ordered PNC to file a supplemental brief addressing the following issues: (1) which of the three responses filed by PNC is the operative document; (2) the factual basis for the postpetition amount due of $674,693.60 in PNC's Third Response (the amount appears to be the entire principal of the loan); and (3) the circumstances under which Mr. Van Zandt filed the Second Response, which showed Debtor to be current prepetition and postpetition, when on the same day he emailed Debtor's counsel an itemized statement showing $62,623.90 in escrow charges.

In response to the order for further briefing, Mr. Van Zandt filed a declaration in which he stated the Third Response was the operative response. He admitted it erroneously stated that the full mortgage of $674,693.60 was due and owing. Mr. Van Zandt justified his errors by explaining that he misunderstood the instructions in the response form and that he does not regularly practice chapter 13 bankruptcy law. Mr. Van Zandt also attached a proposed Response to Notice of Final Cure Payment with itemized statement ("Proposed Response") to his declaration.

Debtor filed a reply, which correctly pointed out that the Proposed Response was not signed by Mr. Van Zandt, even though his name appeared as the person who prepared it, and was not filed. Debtor claimed that PNC changed the escrow amount without any notification to Debtor, as required by Bankruptcy Rule 3002.1. Debtor requested the court to preclude PNC from presenting any evidence of the escrow charges, in addition to deeming the mortgage current and to award attorney's fees to Debtor.

At the hearing on April 21, 2016, the court issued a tentative ruling on the record, stating it would award attorney's fees to Debtor but would not preclude PNC from introducing evidence of the omitted information because the relief was raised for the first time in Debtor's reply, the record was scant in terms of whether the omission was harmless, and pursuant to the holding in *In re Tollios*, 491 B.R. 886 (Bankr. N.D.Ill. 2013), Debtor did not appear to be prejudiced.

At oral argument, Debtor argued that the request to preclude evidence was, in fact, raised in first paragraph of the Motion in which Debtor requested the court to deem the loan postpetition current. Debtor also contended that PNC began advancing postpetition property taxes and insurance without filing and serving the appropriate notices to Debtor.

PNC explained that the Proposed Response was not signed because it did not want to file it without permission from the court.[6] In responding to Debtor's argu-

---

5. According to the Declaration of Peter J. Van Zandt, filed on April 20, 2016, the sanctions was paid to Debtor's counsel on April 20, 2016.

6. By the time of the hearing, a response pursuant to Rule 3002.1(g) would have been untimely because it must be filed within 21 days of Trustee's Notice, which was filed on January 13, 2016.

ments, PNC argued that the escrow payments included insurance which lapsed, and that Debtor knew PNC was paying the property taxes and insurance. To the extent Debtor contended otherwise, PNC requested an evidentiary hearing. In response to Debtor's argument that Debtor was paying the amounts as specified in various notices of payment change, PNC replied that there was not a substantial change in the payments to PNC for Debtor to believe those payments covered over $7,000 in taxes and over $3,000 in insurance premiums that PNC advanced. PNC asserted that the amounts in the various notices of mortgage payment change included only the interest payments so Debtor was not paying down funds advanced by PNC for postpetition property taxes and insurance.

At the conclusion of the hearing, Debtor requested an accurate spreadsheet including application of Debtor's payments currently showing as "suspended" by PNC. The court ordered PNC to file a response, signed under penalty of perjury and include a supporting itemized statement, within a week of the hearing, which was April 28, 2016.

PNC filed an untimely response on May 25, 2016.

## II. DISCUSSION

### A. Bankruptcy Rule 3002.1

As succinctly stated by another bankruptcy court, Bankruptcy Rule 3002.1 "was adopted in December 2011 to address a significant problem caused when mortgage companies applied fees and costs to a debtor's mortgage while the debtor was in bankruptcy without giving notice to the debtor and then, based on these post-petition defaults, sought to foreclose upon the debtor's property after the debtor completed the plan." *In re Tollios*, 491 B.R. at 888.

Bankruptcy Rule 3002.1 attempted to solve this problem by requiring the holder of the claim to file and serve notices of payment changes no later than twenty-one days before the new payment is due, and by requiring notices itemizing all postpetition fees, expenses or charges that the holder asserts are recoverable against the debtor or her residence within 180 days after the date on which they are incurred. Fed.R.Bankr.P. 3002.1(b)–(c). It established a procedure for court determination if the debtor objects to the notices within one year. Fed.R.Bankr.P. 3002.1(e). On completion of the plan, it allows parties to obtain a determination that the debtor's mortgage is deemed current. Fed.R.Bankr.P. 3002.1(f)–(h). Finally, the rule sets forth the consequences for the failure to provide the notices in subparts (b) and (c) and the response in subpart (g). Fed.R.Bankr.P. 3002.1(i).

The parties do not dispute that Bankruptcy Rule 3002.1 applies here. PNC's claim was secured by an interest in Debtor's principal residence, and the Debtor's plan provided for its payment under § 1322(b)(5) of the Bankruptcy Code. *See* Fed.R.Bankr.P. 3002.1(a).

### B. Failure to Comply with Bankruptcy Rule 3002.1(g)

█ If a mortgage holder disagrees with the trustee's notice of final cure payment indicating that the debtor is current on postpetition obligations, Bankruptcy Rule 3002.1(g) requires that the holder files a response as a supplement to its proof of claim and to "itemize the required cure or postpetition amounts, if any, that the holder contends remain unpaid as of the date of the statement." Fed.R.Bankr.P. 3002.1(g). The itemization must be sufficiently detailed for a debtor to contest the holder's response under Bankruptcy Rule

3002.1(g). *See In re Carr,* 468 B.R. 806, 808 (Bankr. E.D. Va. 2012)("The creditor must respond to that notice [of final cure payment] by acknowledging that it is correct, or if it is not correct, stating *with particularity* the amounts that remain unpaid." (emphasis added)). Furthermore, a response pursuant to Bankruptcy Rule 3002.1(g) "must be signed by the holder under penalty of perjury." *In re Nieves,* 499 B.R. 222 (Bankr. D.P.R. 2013).

■ PNC does not dispute that none of its three responses include an itemized statement as required by Bankruptcy Rule 3002.1(g). *PNC Bank, National Association's Opposition to Debtor's Motion to Deem Mortgage Current,* filed on March 7, 2016, p. 2: 25–26. The Proposed Response, which was attached to the Declaration of Peter J. Van Zandt as an exhibit, included an itemized statement but was not signed. At the hearing on April 21, 2016, PNC's counsel represented to the court that she did not want to file a signed response until PNC received permission from the court to file another response. The court gave PNC a deadline of April 28, 2016, to file a proper response that was signed under penalty of perjury and included the appropriate itemized statement. PNC failed to do so. Instead, PNC belatedly filed a response on May 25, 2016.[7] It did not request an extension of time or provide any explanation why the response was filed almost a month after the court-imposed deadline.

For these reasons, the court finds that PNC failed to provide information required under Rule 3002.1(g).

The court notes that during oral argument, the parties argued extensively whether PNC filed the appropriate notices under Rule 3002.1(c) during the pendency of this case and PNC requested an eviden-tiary hearing on this issue. PNC's compliance with Rule 3002.1(c), or lack thereof, is not relevant. Debtor made the Motion under Rule 3002.1(i) for failure to comply with Rule 3002.1(g). The record is clear that PNC did not comply with Rule 3002.1(g), and PNC admitted as much.

## C. Sanctions pursuant to Bankruptcy Rule 3002.1(g)

Bankruptcy Rule 3002.1(i) provides the sanctions available if a secured creditor fails to file a proper response with the necessary information set forth in Rule 3002.1(g). It states that the court may preclude the creditor from presenting "the omitted information, in any form, as evidence in any contested matter or adversary proceeding in the case, unless the court determines that the failure was substantially justified or is harmless," and/or "award other appropriate relief, including reasonable expenses and attorney's fees caused by the failure." Fed.R.Bankr.P. 3002.1(i).

■ Debtor in this case requests several forms of sanctions, including attorney's fees, striking the filed responses for their non-compliance with Rule 3002.1(g), deeming the mortgage current, and precluding PNC from presenting evidence of the alleged outstanding postpetition obligations in future proceedings. The court will discuss each of these in turn.

### 1. Request for Attorney's Fees

The award of attorney's fees is more than justified in this case. Within a span of four days, PNC filed three responses to Trustee's Notice that were confusing and inaccurate. None of the responses included an itemized statement as required by Rule 3002.1(g) so neither the court nor Debtor

---

**7.** The latest response was again incorrectly filed on the docket, instead of as a supplement to PNC's proof of claim, as required by Rule 3002.1(g).

could verify the amounts stated in the responses. Debtor and her attorney had to expend time, energy, and efforts to get an accurate itemization of the alleged amount owed postpetition, including the filing of this Motion, when it was PNC's duty to file an accurate response and itemized statement. The court further notes, for the record, that PNC did not oppose the award of attorney's fees in its written opposition and during oral argument. Under the circumstances, the court will award attorney's fees to Debtor.

### 2. Request to Strike Responses

Debtor's request to strike the First Response, the Second Response, and the Third Response filed on the court's docket will also be granted. As Mr. Van Zandt stated in his declaration, filed on April 7, 2016, all three responses were incorrect and did not accurately reflect what PNC alleged is owed postpetition. An inaccurate response under Rule 3002.1(g) complies neither with the letter nor the spirit of Rule 3002.1 and defeats the very purpose for which Rule 3002.1 was enacted.

### 3. Preclusion of Evidence

Debtor in its Motion sought an order deeming the mortgage current. Rule 3002.1(i)(1) authorizes an order precluding the introduction of evidence but it does not specifically authorize an order determining that a mortgage obligation is current.[8] In response, Debtor's counsel contended that she sought an order precluding PNC from introducing evidence of the $62,623.90 in escrow charges in future proceedings in the first paragraph of the Motion. PNC's counsel (at oral argument, but not in its papers) indicated that the Motion did not ask for an order precluding the introduction of evidence.[9]

I find PNC has had sufficient notice and an opportunity to respond on this issue. Under Rule 3002.1(i)(1), the court can preclude the introduction of evidence. A party like PNC can avoid this conclusion by showing that its actions were substantially justified or harmless. Fed.R.Bankr.P. 3002.1(i)(1). PNC asserted the harmlessness defense in both its written opposition and at oral argument. Because the harmlessness defense is applicable only to the preclusion of evidence relief, PNC had the opportunity and in fact did argue against the preclusion of evidence by raising the defense available under subpart (1).

I find that precluding the introduction of evidence here would be consistent with the purpose of Rule 3002.1. "The rule is intended to provide the mortgagor-debtor information necessary to determine the *exact amount* needed to cure any prepetition arrearage and the amount of the postpetition payments." Report of the Judicial Conference Committee on Rules of Practice and Procedure to the Chief Justice of the United States and Members of the Judicial Conference of the United States: Federal Rules of Bankruptcy Procedure (September 2010)(emphasis added). PNC's actions defeat the purpose of Rule 3002.1. It repeatedly filed inaccurate responses without any support in the form of an itemized statement. The court gave PNC one last opportunity to file an accurate response that complies with Rule

---

8. It is worth observing that the effect of deeming a mortgage current and precluding the introduction of evidence that it is not current would point to the same conclusion: Debtor is current on a loan.

9. PNC's written opposition belies the assertion by its counsel at the hearing that PNC read the Motion as requesting only the award of attorney's fees. In the opposition, PNC argued that its omission of the itemized statement is harmless and that "it would be an unmeasured, arbitrary, and punitive sanction to award Debtor a windfall in the amount of $62,623.90 ..."

3002.1(g), but despite PNC's counsel's representation at the hearing that this matter has PNC's "undivided attention," PNC ignored the deadline set by the court and filed a response almost a month after the deadline.

In short, despite three attempts at filing a response, a motion for sanctions from Debtor, an oral order from the court, and assurances from PNC's counsel, PNC continued its repeated failure to comply.

PNC cites to *In re Tollios*, 491 B.R. 886, for the proposition that the omission here is harmless. *Tollios* is clearly distinguishable. In that case, the debtors filed a motion under Rule 3002.1(i) based on Chase's alleged failure to comply with Rule 3002.1(b). Specifically, debtors alleged that Chase violated the rule because the notice of payment change was not filed with the court and was not served on debtors' attorney and the chapter 13 trustee, although the notice was sent to debtors. Chase increased debtors' monthly payments because debtors failed to pay their property taxes and Chase paid them. Debtors did not pay the increased escrow amount and acknowledged that they could not afford to pay the property taxes. In seeking sanctions under Rule 3002.1(i), debtors requested, among other things, that their loan be deemed current and that the original escrow amount, which included only insurance payments and not property taxes, be reinstated for the life of the loan. As paraphrased by the court, "[i]n effect, the debtors seek a determination that they are not liable for the taxes that Chase has paid on their behalf, or for any taxes that will be owed in the future, because of Chase's failure to file and properly serve the notice of the increase in the monthly payment." *Tollios*, 491 B.R. at 888.

In deciding that the failure was harmless, the court explained that debtors knew they had to pay the property taxes but did not pay them, they received the notice from Chase of the increase in escrow amount, the plan required debtors to make direct payments to Chase so the failure to notify the trustee had no impact, and lastly debtors admitted they could not afford to pay the property taxes. In other words, irrespective of whether Chase filed a proper notice, debtors could not have paid the property taxes or the increased escrow payments.

The circumstances here are different. Debtor does not seek to avoid her past or future tax liability. During oral argument, Debtor's counsel stated that Debtor made payments to PNC in an amount as indicated in various notices of payment change filed by PNC in this case, an assertion that was not disputed by PNC. Debtor's position is that these payment changes included escrow payments for taxes and insurance. So if Debtor had been paying the amount as directed by PNC, there should not be a shortfall of $62,623.90 in escrow charges at the end of the plan. Debtor simply wanted an itemized statement so she could find out why there was a shortfall. It was only as a last resort due to PNC's repeated failure to include an itemized statement to support its Rule 3002.1(g) response that Debtor filed this Motion.

PNC argued that Debtor knew or should have known that the notices of payment change did not include escrow payments. Specifically, PNC's counsel stated at the hearing, "It [the payment changes] was similar to the interest payments that [debtor] was paying before that. There wasn't a substantial change that should have given anyone the belief that over $7,000 in taxes and insurance premiums of $3,000 would have included in that payment. That would have been an increase of nearly $800 a month from the prepetition payments and there was no such increase."

This argument contradicts the record of this case. According the confirmed plan, the mortgage payment was $3,023 per month, at least as of the time of confirmation on December 16, 2010. On August 14, 2012, PNC filed the first of four Notice of Mortgage Payment Change, indicating that the new payment was $1,897.59, which did not include any escrow payments. On November 16, 2012, PNC filed a second Notice of Mortgage Payment Change, which shows an increase in escrow payment from $787.59 per month to $4,145.05 per month.[10] On August 14, 2013, PNC filed a third Notice of Mortgage Payment Change, which does not show any change in escrow payment but principal and interest payment decreased from $1,897.58 to $1,616.45. Based on the total new payment of $2,389.02, the escrow payment at the time of this third notice would have been $772.57 ($2,389.02–$1,616.45). On December 11, 2013, PNC filed the last Notice of Mortgage Payment Change, showing an increase in escrow payment from $772.57 to $1,153.76.

Given that PNC was expressly charging escrow payments ranging from $772.57 to $4,145.05 since 2012, PNC's argument that Debtor knew the payment changes did not include escrow for insurance and tax payments is unpersuasive.

PNC provided numerous explanations for its failure to file appropriate notices under Rule 3002.1(b) and (c), such as it was attempting to resolve the matter informally with Debtor and it was considering a loan modification, but none of these explains why PNC did not file an accurate response with an itemized statement signed under the penalty of perjury, as required by Rule 3002.1(g). Mr. Van Zandt's explanation that he was "inexperienced" with the form is hardly justifiable because, under Part 4 of the form, in plain non-legal language, it provides that if the creditor states that the debtors are not current with all postpetition payments, "including all fees, charges, expenses, escrow, and costs, the creditor *must attach an itemized payment history* disclosing the following amounts from the date of the bankruptcy filing through the date of this response." *Official Form 4100R.*

The omission of the itemized statement is not harmless. "[Rule 3002.1] creates a procedure that requires the creditor to respond to a notice by the trustee with a statement that the plan was either completed satisfactory, or there are disagreements to be resolved by the court on request of the debtor or trustee." *In re Kreidler,* 494 B.R. 201, 203 (Bankr. M.D.Pa. 2013). PNC made a mockery of this procedure. By filing three wildly inaccurate responses within a span of three days, together with the fact that Debtor made escrow payments in an amount provided by PNC, Debtor justifiably wanted to see an accurate itemized statement so she could determine whether she disagreed with PNC's calculation. To the extent that she disagreed, Debtor was entitled to file a motion under Rule 3002.1(h) to have the matter resolved by the court. PNC's lack of compliance makes this determination impossible.

PNC's assertion of "no harm no foul" based on its counsel emailing an itemized statement to Debtor's counsel is meritless. An email is not submitted under penalty of perjury as the court-filed form would be. Moreover, Debtor could not contest the itemized statement because it was never filed as part of the response. As a general matter, if every rule requiring a party to file a document can be satisfied simply by sending it to the opposing party, the sys-

---

**10.** PNC did not file any notices commencing

the escrow payments of $787.59 per month.

tem of procedures for court filings and service would be rendered useless.

#### 4. Request to Deem Mortgage Current

■ Lastly, Debtor requests that the mortgage be deemed current. Rule 3002.1(i)(2), the only subdivision where such relief is addressed, allows the court to "award other appropriate relief." Case law is scant as to whether deeming the mortgage current constitutes "other appropriate relief." *See In re Ogden*, 532 B.R. 329, 333 (Bankr. D.Colo. 2014)("Whether 'other appropriate relief' includes the ability to preclude the mortgage holder from later collecting the fees and charges is an open question."). Debtor did not provide any legal authority for this type of relief.

Reading Rule 3002.1 as whole and giving effect to every subpart, deeming a mortgage current under the circumstances here involves a two-step process. First, a debtor may request that the court precludes evidence of the omitted information under Rule 3002.1(i)(1). Second, a debtor may then file a motion for determination that debtor is current postpetition pursuant to Rule 3002.1(h), at which time the creditor would be precluded from presenting the omitted information as evidence. While I recognize that this process will require Debtor to expend additional attorney's fees, it is a more appropriate interpretation of Rule 3002.1 and has a better chance of standing up to judicial scrutiny. I therefore decline to determine the mortgage current now.

### III. CONCLUSION

Based on the foregoing analysis, the court finds that PNC failed to comply with

Bankruptcy Rule 3002.1(g), and such failure was not harmless. Pursuant to Bankruptcy Rule 3002.1(i), the court grants the following relief to Debtor:[11]

1. Debtor is awarded attorney's fees and costs. Debtor's counsel shall file a declaration, with supporting time records, on the amount of fees and costs she expended in this matter no later than fourteen (14) days from the date of entry of this order. If PNC objects to the reasonableness of the fees, it may file an opposition no later than seven (7) days after Debtor's counsel files her declaration. The matter will be deemed submitted at that time.

2. The First Response, Second Response, and Third Response are stricken for failure to comply with Bankruptcy Rule 3002.1(g).[12]

3. PNC is precluded from presenting evidence, in any form, of the $62,623.90 in escrow charges in any contested matter or adversary proceeding in this case.

Debtor's request to deem the mortgage current is denied without prejudice to Debtor filing a motion pursuant to Bankruptcy Rule 3002.1(h). The deadline to file such a motion is twenty-one (21) days from the date of entry of this order.

IT IS SO ORDERED.

---

11. These sanctions flow from PNC's failure to file a response to Trustee's Notice of Final Cure Payment that includes the correct amount supported by an itemized statement. Although PNC did not file its responses as a supplement to its proof of claim, as required under Rule 3002.1(g), this defect is not actionable under Rule 3002.1(i), which refers only to the failure "to provide any information" as required by subpart (g).

12. The response filed on May 25, 2016, is untimely and will not be considered.